IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BRIAN F. HOGAN                                                                                    PLAINTIFF

VS.                                                                          CIVIL ACTION NO. 3:07cv616-FKB

CHRISTOPHER EPPS, RICKY SCOTT,
EMMITT L. SPARKMAN, and LETITIA ROACH.                            DEFENDANTS

MEMORANDUM OPINION

This is an action brought pursuant to 42 U.S.C. § 1983 by Brian Hogan, a state prisoner, for denial of due process in a prison administrative proceeding. The parties consented to jurisdiction by the undersigned, before whom a bench trial was held on January 26, 2011. Having considered the evidence presented a trial, the court makes the following findings of fact and conclusions of law.

Prior to November 9, 2001, Plaintiff was housed in Unit 29 at the Mississippi State Prison in Parchman with a custody classification of C. On that date, he was served with a detention notice indicating that he was being placed in administrative segregation in Unit 32 pending an investigation by Internal Affairs Investigator Ricky Scott. A hearing was held within seventy-two hours, as required by prison procedures, and a recommendation was made that Plaintiff remain in administrative segregation pending completion of the investigation. On December 4, 2001, Hogan received a detention noticed informing him that he had been identified as a Security Threat Group (STG) leader. That same day, he was transferred to STG administrative segregation at Unit 17 at the prison. A hearing was held on December 6, 2001. As a result of the investigation and hearing, Plaintiff was validated as a leader in the Gangster Disciples. Since that time, he has remained in STG

segregation with a custody classification of D. From December 4, 2001 through September 30, 2004, he was housed in the STG unit at Unit 17 at Parchman. From September 30, 2004 through August 6, 2007 he was housed in the STG unit at Unit 32 A at Parchman. Since August 6, 2007, he has been housed in an STG unit at South Mississippi Correctional Facility.

Plaintiff contends that the procedure by which he was validated as a STG leader, downgraded to D custody and placed in STG segregation did not comport with the requirements of due process. At trial he claimed that prison officials had confused him with an inmate having a similar name. He also testified that at the administrative hearing on December 6, 2001, he was not informed of the evidence against him and was not given an opportunity to defend against the charge that he was an STG leader.

In order to state a viable claim for denial of procedural due process, a prisoner must establish that he has been deprived of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Coleman v. Dretke*, 395 F.3d 216, 221 (5th Cir. 2004). Generally, changes in custody status or confinement in segregation do not implicate a liberty interest. *See Luken v. Scott*, 71 F.3d 192, 193 (1995). An exception to this general rule exists where the change in custody status or placement in segregation results in conditions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In an attempt to make the requisite showing, Plaintiff called to the stand two MDOC inmates with experience in STG segregation, Courtney Bynum and Eric Jones.

According to Bynum and Jones, STG segregation involves isolation in a single-man cell, approximately fifty-four square feet in size, for twenty-three hours a day during the week and twenty-four hours a day on weekends.  One hour of yard call is allowed on weekdays in a one-man exercise yard.  All meals are taken in the cell.  Inmates in STG segregation are allowed no visitation and no phone calls and have no access to television or radio.  Both Bynum and Jones testified that at Unit 17 at Parchman there was inadequate hot water, that the cells were inadequately heated, and that they were infested with spiders, mosquitos, and other vermin.  Bynum testified that inmates housed in STG units experience very little contact with other persons, as they are locked behind a solid steel door with all food and mail being passed through a tray hole.  However, the degree of isolation described by Bynum was somewhat contradicted by the testimony of both him and Jones that prison officials place members of rival gangs near each other and that this results in a high level of violence in the unit.

In their defense, prison officials gave detailed testimony concerning the process of identifying and validating inmates as STG leaders and of the procedural protections afforded inmates who are so identified.  Emmitt Sparkman, the Superintendent at Parchman and MDOC's Deputy Commissioner, testified concerning the unique and serious threat posed by gang members to the security and safety of the general prison population.  Because of this threat, MDOC has a zero-tolerance policy for gang activity.  This policy includes identifying gang leaders and removing them from the general prison population.  According to Sparkman, isolating these individuals from other prisoners significantly reduces prison violence.  The process of recommending that an inmate be

3

validated as a STG leader can begin with information from anyone in the prison, such as a correctional official or a mail room employee. From there, the STG Coordinator investigates. If he finds sufficient evidence of gang membership, the STG Coordinator sends a recommendation to the warden. The warden may then make a recommendation for further investigation. The process may be terminated at any stage if the reviewing individual concludes that there is insufficient evidence for validation. If the recommendation survives all levels of review, the inmate is served with a detention notice, and an informal hearing is held within seventy-two hours. At the hearing the officer gives the inmate the opportunity to refute the allegations and present documentary evidence. The inmate may appeal an unfavorable decision through the Administrative Remedies Program. Once an inmate has been validated and placed in STG segregation, he may return to the general population by completing a three-stage renunciation program. On average, completion of the renunciation program takes approximately eighteen months. Sparkman testified that many inmates complete the program successfully.

In his testimony, Sparkman also addressed Plaintiff's validation process and his failure to complete the renunciation program. Sparkman testified that the notices and hearings provided to Plaintiff complied with the prison's procedures. According to Sparkman, Plaintiff has remained in stage one of the renunciation program for nine years because of Plaintiff's refusal to renounce gang membership and failure to comply with prison rules.

Ricky Scott, the STG Coordinator for MDOC, testified as to the circumstances leading up to Hogan's validation as a gang leader. According to Scott, the process began

when a letter to Hogan from a Gangster Disciple leader was recovered. In the letter, the gang leader gave Plaintiff permission to carry out a "hit" and authority to appoint others to do so. Scott then investigated and collected intelligence which, according to him, confirmed Plaintiff's STG status. The specific nature of this intelligence was not provided to Plaintiff because of security concerns.

The court concludes that Plaintiff has failed to establish that he had a liberty interest in avoiding placement in STG segregation. The conditions of STG segregation, while harsh, do not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484.[1] The court also finds that, even if Plaintiff had established a liberty interest, he would still not be entitled to relief because he was afforded all the process that was due in the validation process. The court finds credible the testimony of Sparkman that Plaintiff was provided notice and an

---

[1] In a previous opinion, this court held that Plaintiff's sworn allegations concerning segregation conditions were sufficient to raise the possibility of a liberty interest and defeat Defendants' motion for summary judgment, given Defendants' failure to submit any contrary evidence. In so ruling, the court relied upon *Wilkinson v. Austin,* 545 U.S. 209 (2005). In *Wilkinson*, the Supreme Court considered the question of whether inmates had a liberty interest in avoiding placement in a supermax prison where the prisoners were held in extreme isolation in lighted cells twenty-four hours a day. The cells had solid metal doors with metal strips on the sides and bottoms, preventing communication with other inmates. Recreation was limited to an indoor recreation cell. Visitation was only rarely permitted and in all events was conducted through a glass wall. Inmates were deprived of almost all outside stimuli and human contact for an indefinite period of time limited only by the length of their sentences. There was no process in place whereby a prisoner could qualify for less restrictive conditions. The Supreme Court held that these conditions were sufficiently severe to give rise to a liberty interest. The evidence in the present case does not prove conditions rising to this same level of severity. Of particular significance is the fact that all inmates in MDOC STG segregation undergo meaningful periodic review of their assignment to the STG unit and have the opportunity to complete the STG renunciation program and return to the general prison population.

opportunity to refute the allegation that he was a gang leader.  The recommendation for Plaintiff to be placed in STG segregation was subjected to multiple levels of review, with the reviewing official having the authority to overturn the recommendation at each level.  Since then, his status has been reviewed periodically.  These procedures are sufficient to satisfy the requirements of due process.  *See Wilkinson*, 545 U.S. 209, 227 (finding similar informal, nonadversary procedures sufficient).

In summary, the court finds that Plaintiff has failed to establish that his assignment to and continued placement in STG segregation violated his constitutional rights.  For this reason, the court finds in favor of Defendants.  A separate judgment will be entered.

So ordered and adjudged, this the 31st day of March, 2011.

                                  /s/ F. Keith Ball
                                UNITED STATES MAGISTRATE JUDGE